944

## In re MERRIMAN.

### Patent Appeal No. 3364.

Court of Customs and Patent Appeals.

Feb. 4, 1935.

Kwis, Hudson & Kent, of Cleveland, Ohio (Watts T. Estabrook, of Washington, D. C., and S. J. Boughton, of Cleveland, Ohio, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT; Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 4, 7, 8, 9, 10, and 11, and refusing to consider claims 5 and 6, in appellant's application for a patent for an alleged invention relating to improvements in manhole frames and covers therefor, and a process for making the same.

Claims 4, 5, 6, 7, and 9 are illustrative. They read:

"4. In combination, a frame comprising an annular cover seat of chilled iron, an enclosing wall surrounding said seat, said wall being spaced from the seat, and a cover having an annular chilled iron surface formed for engagement with said seat, whereby hardened, accurate engaging surfaces may be provided.

"5. A method of providing a true and accurate cover seat in a manhole frame, which consists in casting said frame in a sand mold containing a chill ring against which the cover seat is to be cast, and providing in the mold an annular bead of sand surrounding said chill to form a groove in the casting surrounding said cover seat.

"6. A method of providing a true and accurate cover seat in a manhole frame, which consists in casting said frame in a sand mold containing a chill ring against which the cover seat is to be cast, said chill ring having an edge beveled away from the joint between the cover seat and frame wall, and providing in the mold an annular bead of sand surrounding said cover seat.

"7. In combination, a cast metal frame comprising an annular cover seat of chilled metal, an enclosing wall surrounding said seat, said wall being spaced from the seat with a groove intervening."

"9. A method of providing true and accurate engaging surfaces in an iron frame and cover, which consists in casting said frame and cover in sand molds containing chills with accurately formed surfaces complementary to the engaging surfaces of the castings."

The references are: Tellander, 246,694, September 6, 1881; Conolly et al. (Br.) 1,384, January 30, 1886; Candee, 366,455, July 12, 1887; Muckle et al., 392,877, November 13, 1888; Steele, 681,995, September 3, 1901; Howe, 736,102, August 11, 1903; Craig, 835,012, November 6, 1906; Boykin, 1,296,751, March 11, 1919; Rust, 1,475,199, November 27, 1923; Needham (Br.), 203,230, September 6, 1923; Anderson, 1,771,201, July 22, 1930.

The involved claims are sufficiently descriptive of appellant's product and process.

Prior to appellant's alleged invention, it was the practice to employ the machining process in order to secure accurately engaging surfaces of cover seats of manhole frames and covers therefor.

We quote from the brief of counsel for appellant, wherein the involved invention, and its advantages over the prior art, is explained:

"The chill rings for each of these two surfaces are made in one piece, being steel rings, the active surfaces of which are carefully inspected after each casting operation and resurfaced when necessary so as to be maintained perfectly flat. A somewhat similar result can be obtained by machining the two surfaces of the castings, which method has been followed at times prior to the present invention, but machining is an expensive operation, and the present invention effects a large saving in this respect.

"It is also more desirable for another reason, namely, that the chilled surfaces are more wear resisting than machined surfaces. The latter result, however, is merely incidental and is not relied upon to lend patentability to the invention.

"The invention, then, consists in providing in the frame an annular cover seat which has a perfectly true surface, in providing a cooperating true surface on the cover, and in accomplishing this result by the use of accurately surfaced chill rings. It consists further, as described in some of the claims, of spacing such chilled annular seat away from the surrounding frame wall, by virtue of which it is possible to employ a one-piece chill ring in forming the seat (a multiple-piece ring could not be relied upon to produce a perfectly flat seat in every instance). The invention further includes the idea of separating the seat from the surrounding wall by a groove, which has a valuable function in that it removes any possibility of deflection of the chill ring during contraction of the frame casting upon cooling."

The patent to Tellander relates to an apparatus for casting hollow articles in metallic molds. The patentee stated that the object of his invention was to "cast all kinds of cylindrical, conical, or other hollow articles in metallic molds in such manner that * * * smooth and hardened surfaces are obtained directly in casting," and thus avoid the time and expense required for turning them in a lathe. The patentee employed in his apparatus a metallic core for carrying out his invention.

The patent to Candee relates to a mold for axle boxes, and discloses such articles having interior chilled metal surfaces produced in the process of casting.

The patent to Muckle et al. relates to a cover for manhole chambers of underground conduits, and discloses in the drawing a groove between the cover seat and the side wall.

The patent to Steele relates to manhole frames and covers, and particularly to "reinforcing both the frame and cover during formation or casting by the application of strengthening devices," etc. Although the Board of Appeals did not discuss this patent, the Primary Examiner stated that it disclosed manhole frames and covers of the conventional type, the engaging surfaces "being fitted" accurately. We may say at this point that we find nothing in the reference to suggest the improvements claimed in appellant's application.

The patent to Howe relates to molding car wheels. It was cited by the tribunals of the Patent Office as showing that it was "old and well known to chill parts of iron castings during the process of casting to obtain hard and tough wearing surfaces."

The patent to Craig relates to improvements in manhole construction, and discloses a groove between the flanges on which the cover rests and the side wall of the manhole casing.

The patent to Boykin relates to a method of casting valve seats, and particularly a "one-piece seat the active face of which is hardened" by means of metallic chills during the casting operation, in order to increase its resistance to wear.

The patent to Rust relates to improvements in manhole covers. The patentee stated that it was preferable, in order to secure accurate engagement between the cover and the cover seat, to machine their surfaces.

The patent to Anderson relates to a "green sand core," and, among other things, to a means adapted to permit the pouring of molten metal into the mold without destroying the core.

The British patent to Conolly relates to improvements in manhole doors for drains, sewers, and the like, and discloses a groove between the seat on which the cover rests and the side wall of the frame.

The British patent to Needham et al. also relates to manhole covers, and discloses a groove between the seat for the cover and the side wall of the manhole frame.

As originally presented, appellant's application contained four claims, Nos. 1 to 4,

inclusive. All of those claims were rejected by the Primary Examiner on the patents to Rust, Howe, Boykin, and Steele.

On appeal, the Board of Appeals affirmed the decision of the Primary Examiner as to claims 1, 2, and 3, but reversed his decision as to claim 4. The Board stated that as claim 4 contained the feature of spacing the seat from the wall, and as no reference had been cited showing that feature, it deemed the claim patentable.

Subsequent to that decision, the Examiner cited the patents to Muckle et al., Craig, Needham, and Conolly et al., for the purpose of showing that the feature of spacing the seat from the wall, referred to in claim 4, was old in the art, and requested that the case be reopened for further prosecution of that claim in accordance with rules 139 and 140 of the Rules of Practice in the United States Patent Office.

Thereafter, the affidavits of George B. Sowers and Michael W. Merriman, appellant, were introduced in evidence. Appellant also presented, in addition to claim 4, supra, claims 5 to 11, inclusive.

It appears from the affidavit of George B. Sowers that as an engineer in the division of engineering and construction, department of public service, of the city of Cleveland, Ohio, he was familiar with the specifications for manhole frames and covers used by that city prior to 1929; that the manhole frames and covers made in accordance with such specifications and the then known methods of manufacture, except those whose surfaces were machined, were not satisfactory; that the covers seldom fitted the frames with sufficient accuracy to prevent a rocking movement, which caused considerable noise when vehicles passed over them; that, due to such inaccurate fitting, there was considerable loss due to breakage of the covers; that, during the year 1929, affiant learned of appellant's product and the method of constructing it; that after the matter had been given thorough consideration, the specifications of the city were changed so as to require the purchase and use of manhole frames and covers made in accordance with appellant's method of construction; that since the change in 1929 in its specifications (the affidavit is dated May 16, 1932) the city purchased for replacement purposes approximately 1200 manhole frames and covers of the type disclosed in appellant's application; that during the same period approximately 7,000 of such manhole frames and covers were purchased and used by contractors "in new work upon the streets and roads" of the city of Cleveland; that such frames and covers have given entire satisfaction; that the breakage of covers, and the noise hereinbefore referred to, has been almost entirely eliminated; that appellant's product is superior in wearing qualities not only to the ordinary manhole frames and covers in use prior to the advent of appellant's product, but to those which are machined in order to make accurate engaging surfaces; and that they cost much less, due to the cheaper process of construction, than the machined articles.

In his affidavit, appellant, Michael W. Merriman, stated that he had been engaged in the foundry business for 35 years; that, prior to his alleged invention, " * * * manhole frames and covers were made either as plain iron or steel castings; that the noise caused by covers rocking or slapping upon the frame seats when vehicles passed over them, due to poor fit, and the breakage of covers resulting from the continued hammering thus applied to them, *were well known and well recognized evils for a great many years prior to the said invention;* that, in some instances, cover seats on the frames, as well as the covers themselves, were machined in an effort to cure this difficulty, but that such practice was expensive, the labor expense involved ranging somewhere between one dollar and a half and two dollars and a half ($1.50 and $2.50) per frame and cover, depending upon the wage scale at the time; that deponent's invention, as covered by the said application for patent, came about after he had devoted a great deal of time and thought to the problem; that the chilling of iron surfaces in castings was well known generally and was old and common shop practice, at the time deponent made his invention, where hard surfaces were necessary or desired, but that chilling, for the purpose of producing true and accurate meeting surfaces to take the place of machined surfaces, was a new thought with deponent, and, when applied to the cover seats for manhole frames, met with almost instant success, being recognized by all engineers familiar with such matters, to whom deponent explained the invention, as an important step forward in the art; that the cost of producing such a plane chilled surface for a cover seat of a two foot diameter in a manhole frame, amounts at the present time to about five cents (.05¢) and provides

a perfectly true seat with better wearing qualities than machined seats at approximately one fifteenth (1/15) of the cost; that the provision of a groove, to separate the chilled seat from the wall of the frame, is an essential feature of the invention, inasmuch as the shrinkage of an iron casting, of two feet or more in diameter, amounts to practically one fourth (1/4) of an inch, and the sand, which forms the groove in question, acts as a cushion between the frame wall and the chill ring to prevent the contraction of the casting wall against the ring from causing cracks and breakage in the casting. * * *" (Italics ours.)

The Primary Examiner rejected claims 4, and 7 to 11, inclusive, on the references of record, but declined to consider the patentability of claims 5 and 6 on the ground that they related to subject-matter which had not been previously presented by appellant. Although the Examiner stated, in his decision, that he had carefully considered the argument of appellant relative to the patentability of the claims considered by him, he did not refer to the affidavits of record.

On appeal, the Board of Appeals agreed with the decision of the Primary Examiner holding that claims 4, and 7 to 11, inclusive, were not patentable over the prior art. With reference to claims 5 and 6, the Board said: "The examiner did not pass upon the patentability of claims 5 and 6, but holds that they are for subject matter not involved in the previous prosecution of the case and would require a new consideration and an examination in a different division in the Office. In support of his ruling the examiner cited the Commissioner's decision in Ex parte Comstock, 1923 C. D. 82. This decision was rendered on a petition upon the refusal of the examiner to act on the merits of certain newly made claims. Appellant's remedy would appear to be by a similar procedure, since, as admitted by appellant, on page 7 of his brief, 'These two claims have never had any real action upon the merits.' "

The Primary Examiner declined to consider the patentability of claims 5 and 6 on the ground that they referred to subject-matter not involved in the other appealed claims, and specifically suggested to appellant that the remedy provided in such cases was an appeal to the Commissioner of Patents in accordance with rules 68, 139, and 140 of the Rules of Practice in the United States Patent Office.

The Board of Appeals, as will be noted from the quoted excerpt from its decision, agreed with the Examiner that appellant's remedy was an appeal to the Commissioner of Patents.

Appellant states in his brief that he did not elect to follow the suggestions of the Patent Office tribunals, and now insists that claims 5 and 6 differ from claim 9 in "scope" only, and that the subject-matter is substantially the same.

It is conceded by counsel for appellant, however, that:

"Claim 5 adds to claim 9 the limitation that an annular bead of sand is provided in the mold.

"Claim 6 adds to claim 5 the limitation that the chill ring has an outer beveled surface."

We are not disposed to enter upon a discussion of the nature or extent of the differences between claims 5 and 6 and the other appealed claims.

Counsel for appellant contends in this court that the decision of the Primary Examiner relative to claims 5 and 6, affirmed by the Board of Appeals, amounted to a requirement of division, and that, therefore, rules 68 and 140 of the Rules of Practice in the United States Patent Office are not applicable.

The record discloses that subsequent to the final decision of the Primary Examiner appellant appealed to the Board of Appeals, claiming that the Examiner "erred in requiring cancellation of claims 5 and 6 instead of requiring division between those claims and claim 4." (Italics ours.)

In his reasons of appeal in this court, appellant contends that the Board of Appeals erred in affirming the decision of the Primary Examiner "as to the rejection of claims 5 and 6 upon the ground that they are for subject matter not involved in the previous prosecution of the case."

It is true that, in refusing to consider those claims, the Primary Examiner stated that "they set forth active steps in an art distinctly different from that belonging to pavements and features of a cover and its seat," and that the claims were examinable in a different division of the Patent Office. Nevertheless, he refused to consider the claims, because he was of opinion that the case was reopened solely for the further prosecution of claim 4 and claims to "substantially the same subject matter."

We think it is clear that his decision did not amount to a requirement of division, and that appellant was afforded a remedy by rules 68 and 140 of the Rules of Practice in the United States Patent Office. It may be that the Primary Examiner erred in refusing to consider those claims. However, as to that question, we express no opinion. If it be assumed that he did err in that respect, appellant was afforded a remedy by the rules mentioned, which he declined to pursue. We are of opinion, therefore, that the Board of Appeals was clearly right in affirming the decision of the Examiner refusing to consider the patentability of those claims.

It is conceded by counsel for appellant that the chilling of iron surfaces for the purpose of making them hard was a well-known expedient in the prior art. Appellant contends, however, that the application of chill rings in a casting operation to the surfaces of manhole seats and covers, in order to provide true and accurate engaging surfaces, amounts to invention.

In his second decision, the Primary Examiner stated that it was old in the art to machine "surfaces" in order to secure true and accurate engagement thereof, and that it was also old to chill such "surfaces" for a like purpose.

It is true that the patent to Tellander taught that hollow articles might be cast in metallic molds having a metallic core so that their surfaces would be smooth and hard. It may be, now that appellant has solved the problem confronting those engaged in the production of manhole frames and covers, that it seems simple to combine the references of record so as to produce appellant's claimed invention. However, the patent to Tellander was issued in 1881, and the last issued patent of record having any bearing on the subject, the British patent to Needham, was issued in 1923. Accordingly, it seems strange indeed, considering the facts of record, that those skilled in the art should, for many years, resort to the expensive operation of machining in order to secure accurately engaging surfaces of manhole cover seats and covers, if appellant's claimed process and product were obvious to them.

It is evident from the record that appellant's product was commercially successful because it not only provided hardened durable surfaces of cover seats and covers, but also true and accurate engagement of such surfaces, and because the cost of producing such articles was greatly reduced by eliminating the machining operation theretofore considered necessary in order to produce accurate engaging surfaces.

We are of opinion that appellant's process, as defined in claim 9, and his product, as defined in claims 4, 10, and 11, were not obvious to those skilled in the art, and are, therefore, patentable.

Claims 7 and 8, however, do not relate to the accurate engagement of the covers and cover seats, but are limited to *annular chilled cover seats,* having inclosing walls spaced therefrom by grooves. Those claims do not define appellant's real invention, and, in view of the references, are obviously not patentable.

For the reasons stated, the decision of the Board of Appeals is affirmed as to claims 5 to 8, inclusive, and reversed as to claims 4, 9, 10, and 11.