27 C.C.P.A.(Patents)

## In re KIRBY.
## Patent Appeal No. 4250.

Court of Customs and Patent Appeals.
Feb. 26, 1940.

Frederic P. Warfield, of New York City (Frederic P. Warfield and Nathaniel R. French, both of New York City, of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Claim No. 17 having been allowed, appeal has been taken here from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner in denying patentability, in view of the prior art, of claims numbered 15 and 16. Appellant also here appeals from the decision of the board which dismissed his appeal to it from the action of the examiner in refusing to enter in the case claims numbered 18, 19 and 20.

Claim 15 is illustrative of the subject matter which we are required to here consider and follows: "15. Apparatus for the stationary casting of pipe, comprising a horizontal flask body including a cooperating cope flask and a drag flask, each filled with molding material; and a core-arbor supported within said flask body and having a core member thereon; said molding material and said core member cooperating to define a mold cavity; constricted gates at each end thereof; means for venting said cavity; sprue hole means for each of said gates; and runner means connecting said sprue hole means with each of said gates."

While five references were cited, only two of them need be considered here, since we agree with the holding of the board that the others are cumulative only. The two references are: McWane, 1,386,268, August 2, 1921; Meloche, 1,862,975, June 14, 1932.

The invention of the application relates to the art of the stationary casting of pipes from cast iron or other materials wherein the melted material is flowed into a horizontal mold. In the prior art the method usually employed for producing pipes of this kind was to flow the molten metal through gates extending longitudinally of the mold. There were various objections to this process, among them being the fact

that this procedure was likely to produce imperfect castings owing to inclusions of slag floating to the top of the iron in the mold, and collecting along the lines of the gate openings, and also owing to oxidation of the iron occurring along the gate openings due to exposure of iron to the air at the openings as the casting solidified and cooled. Surface irregularities were also produced at the point corresponding to the gate openings. Nonuniform thickness in the pipe was also one result of this process.

Appellant has improved the old process where the molds were disposed horizontally by providing vents or openings in each end of the mold so that the metal will flow from each end freely through the gates to fill the cavity of the mold. Other features of the invention were stressed by the applicant before the Patent Office tribunals, but with commendable frankness he conceded here that his invention rests in providing for "pouring the molten iron into the mold by way of pouring gates at each end thereof." In his brief he states: " * * * None of these references shows or suggests what appellant claims as his invention, namely, the production of cast pipe in a stationary, horizontal mold equipped with pouring gates at each end of the mold cavity. The issue is accordingly whether or not this development is obvious in view of a combination of references."

The Patent Office tribunals concurred in the conclusion that in view of the Meloche patent which shows substantially the same kind of mold arrangement as that of appellant, except that there is but one opening at one end to receive the molten metal, when considered in connection with the McWane patent, which shows an opening for pouring at both ends of the mold in a centrifugal process, it did not amount to invention to do what appellant has done. On this phase of the case the board said: "Of the references cited the patent to Meloche appears to be the most pertinent. The molding flask of this patent differs from that claimed, in that the molten metal is poured from one end only instead of from both ends. The examiner has taken the position that no invention was involved in pouring from both ends especially in view of the patent to McWane No. 1,386,268. This patent relates to the casting of pipe by a centrifugal process. It is stated in lines 40 to 57, page 2, that it has been found in casting long pipes, that is, from 12 to 16 feet in length, the metal, when poured from one end only, tended to chill and set before it reached the other end, and for that reason this patentee provided means for pouring from both ends of the mold. While it is true that the process used by McWane differs radically from that disclosed by Meloche, still there is this suggestion of pouring from both ends to overcome much the same difficulty which appellant states occurs in pouring from one end only in a stationary horizontal mold. We are, therefore, in agreement with the examiner that the appealed claims are substantially met by these two references. The other references are deemed to be cumulative only and need not be discussed."

We have examined the two reference patents with considerable care and there is no dispute here about what they disclose. It is not denied that the Meloche patent would be a complete and sufficient reference for the rejection of claims 15 and 16 if it showed an opening at each end for receiving the molten metal. Now, the question squarely presented is whether or not one skilled in the art, being familiar with the character of mold and one-end pouring system of Meloche and observing that McWane poured at both ends in a centrifugal casting mechanism, would, without the exercise of invention, produce appellant's device.

It is obvious at once, as the board stated, that the McWane centrifugal mold operates on a wholly different principle than does the mold of the applicant or that of Meloche. McWane wanted longer pipes than those ordinarily produced in molds such as Meloche or the applicant used. In order to insure that the desired length of pipe would be uniform and satisfactory, he provided for centrifugal action or revolving of the mold, and while the same was in revolving motion the charge of molten metal was poured in at one end and this metal surged past the middle of the mold. The pouring at the other end of the mold was not simultaneous with the first pouring but as the metal of the first pouring began to cool it was met with the metal of the second pouring. The revolving and the non-simultaneous pouring at each end is said to bring about the desired results of making the pipe of greater length than ordinarily is obtained and without flaws or defects.

It seems that the problem confronting McWane relative to centrifugal pouring was wholly different than that

which confronted appellant. Appellant has used a non-revolving mold and by pouring at both ends has obtained results not shown to have been obtained in the prior art. It is our view that it is erroneous to conclude that what appellant did was obvious and uninventive. Certainly there is such doubt involved as to warrant the application of the familiar rule that such doubt as exists should be resolved in favor of the applicant. To the extent that the decision appealed from affirmed the rejection by the examiner of claims 15 and 16, it is reversed.

We agree with the board in its holding that claims 18, 19 and 20 were not properly before it and that the appeal as to them was properly dismissed. Claims 18, 19 and 20 are process claims. They were not submitted to the examiner until after final rejection of claims 15 and 16 and the allowance of claim 17. Concerning the application for the consideration of the amendment to include these claims the examiner said: "New claims 18, 19 and 20 are drawn to a method which method has been cancelled from the case. No reason is seen for entering and considering these claims at the present time."

As stated by the board, and for reasons which are obvious from the record, the claims were not considered by the board. Appellant ordinarily would have the right to petition the commissioner for relief which he seeks here and sought before the board. No petition to the commissioner was made and this court has held under similar circumstances that where the claims were not considered by the board they would not be considered by us.

In Re Manson, 99 F.2d 974, 976, 26 C.C.P.A., Patents, 734, the applicant presented new claims after appeal had been taken to the Board of Appeals. The board declined to consider them. In affirming the action of the board we there said: "Appellant did not petition the commissioner to direct the examiner to enter these proposed claims, as he might have done under rules 68 and 142 of the rules of the Patent Office. Under these circumstances the Board of Appeals properly declined to consider the proposed claims. * * *"

In that case the claims were presented after appeal, while in the instant case they were presented after final rejection by the examiner of the claims on appeal. But it would seem that in either case rule 68 of the rules of practice of the Patent Office would apply. This rule provides:

"68. * * *

*    *    *    *    *    *    *

"If amendments touching the merits of the application be presented after the case is in condition for appeal, or after appeal has been taken, they may be admitted upon a showing, duly verified, of good and sufficient reasons why they were not earlier presented.

"From the refusal of the primary examiner to admit an amendment a petition will lie to the Commissioner under rule 142."

In Re Merriman, 74 F.2d 944, 948, 22 C.C.P.A., Patents, 923, in a case quite similar to the one at bar, this court said: "* * * It may be that the Primary Examiner erred in refusing to consider those claims. However, as to that question, we express no opinion. If it be assumed that he did err in that respect, appellant was afforded a remedy by the rules mentioned, which he declined to pursue. We are of opinion, therefore, that the Board of Appeals was clearly right in affirming the decision of the examiner refusing to consider the patentability of those claims.

As to claims 18, 19 and 20, appellant states that the decision of the board should be reversed and the claims "should be allowed." It must be obvious to all that the claims are not before us and could not be allowed by us. However, we are in agreement with the holding of the board that the claims were not before it and that it correctly, under the circumstances stated, dismissed appellant's appeal to it as to those claims.

The decision of the Board of Appeals is therefore modified, being reversed as to claims 15 and 16 and affirmed in respect to the board's action as to claims 18, 19 and 20.