54 CCPA
**Application of Morris MINDICK and Lewis E. Reven.**

**Patent Appeal No. 7731.**

United States Court of Customs and Patent Appeals.

Feb. 9, 1967.

Herbert B. Keil, Richard L. Johnston, Chicago, Ill., for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 13 and 14 of application serial No. 103,425, filed April 17, 1961, entitled "Method of Stabilizing Silica Sols."

The invention relates to a process for stabilizing acidic aqueous silica sols and the improved products produced thereby. The process consists of a double deionization treatment with an aging period between the successive deionization steps, which involve treatment with ion exchange resins. Process claims 16 to 26 have been allowed by the examiner. Product claims 13 and 14, which contain no process limitations, are on appeal and read as follows:

13. An acidic stable salt-free silica sol consisting essentially of an aqueous liquid having colloidally dispersed therein from 3% to 50% by weight of substantially discrete, dense, non-agglomerated particles of silica, which particles have a specific surface area of from 50–800 $m^2/g$, said silica sol

* Senior District Judge, Eastern district of Pennsylvania, sitting by designation.

having a pH ranging between 2.6 to 3.8 and a specific conductivity not greater than 1,000 micromhos/cm. at 77°C., with the pH and conductivity being derived primarily from the dissociation of the acidic groups on the surfaces of the silica particles, said sol being further characterized by maintaining a substantially constant pH over a one month storage period.

14. A silica sol as in Claim 13 wherein the pH of the sol is between about 2.9 and 3.5.

 The sole reference relied upon is Wolter Canadian patent No. 521,741, issued February 14, 1956. Initially, we observe that the precise statutory basis for the prior art rejection has not been expressed by either the examiner or the board, both holding merely that the product claims are "unpatentable over Wolter" since, in the words of the board, "the claims, as broadly as defined, fail to patentably distinguish over the products of Wolter." We generally view such rejections with disfavor, since neither appellants nor the court is informed as to whether the prior art rejection is for anticipation under 35 U.S.C. § 102 or obviousness under 35 U.S.C. § 103. As a general rule, we think examiners and the board have an obligation to state with precision the statutory basis for a rejection, unless the basis is otherwise clear from the terms used. While the words "anticipate" and "fully met by" connote a section 102 rejection, and such words as "render obvious," or even "unpatentable over" (when a combination of references, as distinguished from a single reference, is used) connote a section 103 rejection, the statutory basis for a prior art rejection cannot be ascertained readily when only a single reference is used and terms such as "unpatentable over" and "patentably distinguish" are employed to state the rejection.

On the other hand, we recognize that in exceptional cases doubts may exist as to whether there are in fact any differences between a *claimed* invention and the disclosures of a single reference. This case presents such a situation. Regardless of whatever differences may exist between appellants' *disclosed* products and those of Wolter, we think that the appealed claims are so broad as to read on the products of both appellants and Wolter, as shown by the following analysis.

Wolter expressly discloses his stable aqueous silica sols to be "salt-free." The 20 to 35 percent silica concentration of the patentee's products lies wholly within the 3% to 50% range expressed in appellants' claims. The specific surface area of Wolter's sols is stated to be 80 to 200 $m^2/g$, well within the 50 to 800 $m^2/g$ range recited in the claims before us. The conductance of the "completely deionized" Wolter sols is stated to be "less than 4 times $10^{-4}$ mho/cm.," i. e. less than 400 micromhos/cm., which fully meets the claim limitation that the conductivity be not greater than 1,000 micromhos/cm.

Wolter discloses in example 6 an acidic final product which had been "completely deionized by passing it first through a cation-exchanger, then an anion-exchanger, followed by a cation-exchanger and an anion-exchanger." The acidic sol resulting from this double deionization treatment had a pH of 3.2; and Wolter states that "a sample of this sol had not gelled after one month storage at room temperature," i. e. it remained stable for at least one month at room temperature. The pH of 3.2 for the final product of Wolter's example 6 lies exactly at the midpoint of both the pH range of 2.6 to 3.8 set forth in appellants' claim 13 and the preferred range of 2.9 to 3.5 expressed in claim 14. The claim limitation to the effect that appellants' sol is "further characterized by maintaining a substantially constant pH over a one month storage period" is merely another way of saying that the sol remained stable and did not gel over a one month storage period.[1] The use

---

1. The prior art-recognized correlation between pH changes and sol instability is acknowledged in appellants' specification.

of the word "substantially" also permits some limited variation in pH during storage of a sol.

In addition to his disclosure that the doubly deionized sol of example 6 is stable for at least one month, which is all that is required by the terms of the broad product claims before us, Wolter also teaches that:

 \* \* \* a 30% sol may be stable for as much as several months or more at room temperature and for longer periods at temperatures below room temperature. \* \* \* At a concentration of 20% $SiO_2$ the sol will be stable for comparatively longer times.

It may well be that the products disclosed by appellants are stable almost permanently, or for several years, while the Wolter products are stable only for "several months," but not several years. However, even assuming, without deciding, that this is so, the present claims read on products such as those of Wolter which are stable for storage periods of at least one month, during which time a substantially constant pH is maintained. The product claims before us are so broad that we are unable to perceive any differences at all between the claimed subject matter and the prior art silica sols of Wolter.

 ■ With regard to the breadth of the appealed claims, we note from the record that appellants offered to cancel claim 14 and to amend claim 13 by insertion of limitations to the allowed process, which would convert claim 13 into a product-by-process claim. However, the examiner refused to enter an amendment embodying these proposals, which refusal appellants assign as error in their reasons of appeal. The refusal of an examiner to enter an amendment after final rejection of claims is a matter of discretion. If there is an abuse of discretion, the matter may be remedied by a Rule 181 petition to the Commissioner of Patents. Ultimate judicial review of such matters of practice and procedure may be had in District Court. This court, like the Board of Appeals, does not consider the issue of whether the examiner's refusal to enter the proposed amendment after final rejection constituted an abuse of discretion on his part.

 ■ In summary, appellants have not pointed out, and we have been unable to find, any differences between the *claimed* subject matter of broad product claims 13 and 14 and the prior art silica sols of Wolter, especially that of the reference patentee's example 6. Consequently, we regard the prior art rejection in this case as one of anticipation under 35 U.S.C. § 102(b), and we affirm the the board's decision that claims 13 and 14 are unpatentable over Wolter.

Affirmed.

SMITH, Judge (concurring).

The record shows that the Board of Appeals here consisted of an examiner-in-chief and two acting examiners-in-chief. Appellants do not challenge the legality of that board. For the reasons expressed in my dissenting opinion in In re Wiechert, 370 F.2d 927, 54 CCPA ——, the decision of such a board in my view is a legal nullity. However, I must accept the majority's view on this issue in the *Wiechert* case, i.e., the legality of the board is not an issue here. I therefore participate in the merits of this appeal and in so doing, agree with the conclusion of the majority.