58 CCPA

**Application of Leo L. HENGEHOLD.**

**Patent Appeal No. 8345.**

United States Court of Customs and Patent Appeals.

April 29, 1971.

Roy F. Schaeperklaus, Pearce & Schaeperklaus, Cincinnati, Ohio, attorney of record for appellant. William A. Smith, Jr., Smith, Michael, Bradford & Gardiner, Washington, D. C., James W. Pearce, Pearce & Schaeperklaus, Cincinnati, Ohio, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Judge, Northern District of Iowa, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claim 17 [1] as unpatentable in view of a patent to Haxton,[2] and refusing to review a requirement for restriction made by the examiner under 35 U.S.C. § 121.

### The Invention

The invention relates to a feed turret and speed reduction gear train. Appellant's feed turret arrangement includes a driving gear, a plurality of compound gears each having a large and small gear in axially spaced relationship and idler gears disposed on individual shafts between a pair of end plates, which serve as a turret frame. The compound gears are mounted for rotation on shafts spaced along the circumference of a circle which has the axis of the driving gear as its center. The idler gears are arranged to couple the driving gear to a compound gear and to intercouple the compound gears so that each large gear on the compound gears is driven in the same direction. The plates are disposed in a main frame for rotary adjustment about an axis coinciding with the axis of the driving gear so that the plate assembly may be adjusted within the main frame to bring the large gear of any selected compound gear into driving engagement with a driven or output gear mounted in a fixed location on the frame.

The claim, which recites the output gear and its shaft as a "second gear" and a "second shaft", respectively, is reproduced below with the recitations principally in controversy emphasized:

17. A feed turrent comprising a main frame, a turret frame supported by the main frame for rotation about an axis, a second shaft supported by the main frame adjacent the turret frame and for rotation about an axis parallel to the axis of turret frame ro-

1. Appearing in application serial No. 450,466, filed April 23, 1965 for "Universal Milling and Boring Machines" as a continuation of application serial No. 806,259, filed April 14, 1959, now U. S.

Patent No. 3,232,171 issued February 1, 1966.

2. U. S. Patent No. 2,819,622 issued January 14, 1958.

tation, a second gear supported by said shaft for rotation in unison therewith, *a plurality of compound gears each having two sets of teeth respectively on a large pitch circle and a small pitch circle, said compound gears being supported in spaced relation for rotation about parallel axes such that the teeth on the large pitch circle thereof are engageable with said second gear,* a first shaft supported by coaxial rotation in said turret frame, a first gear secured to said first shaft, gear means coupling the teeth of said first gear and one set of teeth on one compound gear, a plurality of idler gears each meshing with teeth on the small pitch circle of a respective adjacent compound gear and drivingly meshing with teeth on the large pitch circle of a second respective adjacent compound gear, said compound gears being coupled in train by said idler gears for simultaneous like directed rotation at respective unlike speeds, means for indexing said turret frame in said main frame to place the axes of rotation of the first gear, second gear, and a desired one of the compound gears in coplanar relation whereby the first and second gears are connected by turret frame supported gears for predetermined related rotation at a ratio of rotation corresponding to the compound gear engaging the second gear.

## THE PRIOR ART REJECTION

The examiner rejected claim 17, along with claim 2, as "fully met by the patent to Haxton under 35 U.S.C. § 102."

The pertinent disclosure of Haxton can perhaps be best understood from Fig. 7 of that reference which shows a nonplanar cross-sectional plan view of the gears in a circular gear turret:

This apparatus includes a turret made up of circular end plates 12 and 13 with gearing disposed therebetween. The turret is rotatable about the axis of input shaft 16 to selectively bring any one of circumferentially displaced gears 26, 32, 40, 45 and 50, each driven at a different speed, into engagement with a driven gear 27 on shaft 28. A gear 21 on input shaft 16 operates through an idler gear 23 to drive gear 24 on shaft 25, which shaft also carries the first output gear 26 and a small gear 29. The latter gear drives an idler gear 30 on shaft 31 to drive gear 33 and shaft 35 and output gear 32 on the shaft, the latter gear rotating at a speed lower than that of gear 26. Other idler arrangements operate between each pair of the remaining output gears 40, 45 and 50 to drive them at progressively reduced speeds.

The Board of Appeals stated the rejection as it was made by the examiner, but in affirming as to claim 17 said the following:

We have reviewed the stated rejection in the light of appellant's argu-

ments as presented in the briefs and at the hearing and agree with appellant that as to claim 2, the subject matter thereof is not made obvious by the prior art but find the converse true as to claim 17.

The solicitor would have us find from this statement and one other [3] that the board was relying on 35 U.S.C. § 103 in its treatment of the subject matter of this claim. We decline to so find. This is not one of those situations where the record compels a finding that the applicant was adequately apprised of the grounds on which the board's decision was based. Compare In re Jacobson, 407 F.2d 890, 56 CCPA 982 (1969). Accordingly, we will treat the rejection as it was stated by the board, i. e., as being under 35 U.S.C. § 102. Cf., In re Hughes, 345 F.2d 184, 52 CCPA 1355 (1965).

Appellant contended below, as he does here, that Haxton does not respond to the recitation of the compound gears as set out in italics in the claim reproduced above. In response to this argument, the board stated:

> The Examiner has called attention to the fact that "gears 24, 26 and 29 are fast on shaft 25, thus forming a compound gear within the general meaning of the term." Gears 24, 26 are to all intents and purposes a single gear of a relatively large pitch circle which engages idlers as well as a second (driven) gear 27.

We find no error in the board's position. The recitation of each compound gear as having "two sets of teeth respectively on a large pitch circle and a small pitch circle" does not distinguish over the reference disclosure. A compound gear that has three sets of teeth, at least one of which is on a large pitch circle, fully meets the requirements of this limitation. Specifically, the gears 24, 26 and 29 on shaft 25 of Haxton constitute one such "compound gear" and the gears 32, 33 and 35 on shaft 34 constitute another.

Before us, appellant also argues that none of gears 26, 32, 40, 45 and 50, which are engageable with the driven gear 27, "has a set of teeth which is on a large pitch circle of a ' * * * compound gear having two sets of teeth respectively on a large pitch circle and a small pitch circle' ". We do not agree. The gears 26 and 32 are each part of a "compound gear" as required by the claim for the reasons set forth above, and each of these gears 26 and 32 has its teeth "on a large pitch circle." The gear 26, although shown in the drawings as not being as large as the gear 24 on the same shaft with it, is nevertheless on a pitch circle which is "large" with respect to the much smaller gear 29 on the same shaft.

■ The decision of the board sustaining the rejection of claim 17 on Haxton is therefore affirmed.

## THE RESTRICTION REQUIREMENT

Appellant has devoted the major portion of his brief to a discussion of the propriety of the board's denial of jurisdiction to review an examiner's requirement for restriction. The issue presented, as far as we are aware, is one of first impression under the 1952 Patent Act. There has been no challenge to our jurisdiction to review whether the board properly determined the scope of its jurisdiction in the present circumstance. The following background information will facilitate resolution of that issue.

The record shows that the examiner, in his initial office action and acting pursuant to 35 U.S.C. § 121 and power delegated him by Patent Office Rule 142,[4] required appellant's application to

---

3. The board concluded its opinion with the statement: "We do not believe claim 17 patentably distinguishes over the drive disclosed by Haxton * * *."

4. Section 121 reads in pertinent part:
   *Divisional applications.* If two or more independent and distinct inventions are claimed in one application, the Com-

be restricted to one of the six inventions he found to be recited in appellant's sixteen original claims. So far as is relevant here, the examiner placed claims 1 and 3 in "Group III" directed to one invention, and claims 2 and 9–11 in "Group IV" directed to a second invention. In response, appellant traversed the requirement for restriction, provisionally elected the invention of the claims in "Group IV" for action on the merits, and requested "the claims of Group III be included in Group IV". On reconsideration, the examiner modified his restriction requirement by placing claim 9 in "Group III" rather than "Group IV", made that requirement final, and additionally acted on the merits of the claims remaining in "Group IV" by rejecting them on the aforementioned patent to Haxton. Appellant's

response to that action included addition of claim 17 to his application and another traversal of the restriction requirement, with objections particularly directed to the regrouping of claim 9 in "Group III". Subsequently, after the examiner had amplified his reasons for the regrouping of claim 9 and had both placed and rejected claim 17 with the other claims of "Group IV" earlier rejected in view of Haxton, appellant petitioned the Commissioner under Rule 144,[5] protesting the examiner's "arbitrary, unreasonable, [and] unnecessary" refusal to place claims 1, 3 and 9 in "Group IV". On even date therewith, appellant also appealed to the board from the examiner's final rejection of claims 2, 10, 11 and 17, as well as his refusal to place claims 1, 3 and 9 in "Group IV" and act on their merits.[6]

missioner may require the application to be restricted to one of the inventions. If the other invention is made the subject of a divisional application which complies with the requirements of section 120 of this title it shall be entitled to the benefit of the filing date of the original application. A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement, shall not be used as a reference either in the Patent Office or in the courts against a divisional application or against the original application or any patent issued on either of them, if the divisional application is filed before the issuance of the patent on the other application. * * *

Rules 141 and 142 read:

141. Different inventions in one application. Two or more independent and distinct inventions may not be claimed in one application. * * *

142. Requirement for restriction. (a) If two or more independent and distinct inventions are claimed in a single application, the examiner in this action shall require the applicant in his response to that action to elect that invention to which his claims shall be restricted, this official action being called a requirement for restriction (also known as a requirement for division). If the distinctness and independence of the inventions be clear,

such requirement will be made before any action on the merits; however, it may be made at any time before final action in the case, at the discretion of the examiner.

(b) Claims to the invention or inventions not elected, if not canceled, are nevertheless withdrawn from further consideration by the examiner by the election, subject however to reinstatement in the event the requirement for restriction is withdrawn or overruled.

5. Rule 144 reads:
Petition from requirement for restriction. After a final requirement for restriction, the applicant, in addition to making any response due on the remainder of the action, may petition the Commissioner to review the requirement. Petition may be deferred until after final action on or allowance of claims to the invention elected, but must be filed not later than appeal. A petition will not be considered if reconsideration of the requirement was not requested. (See rule 181.)

6. In that notice of appeal, appellant also stated:
A petition to the Commissioner under Rule 144 has been filed herein in regard to the said Examiner's treatment of said claims 1, 3, and 9. In view of said petition, stay of this proceeding until final decision of the aforesaid petition is solicited for the convenience of the Board of Appeals and of the applicant.

The record further shows that the Commissioner, acting through the Director of the Mechanical Examining Operation, denied appellant's petition, and found the requirement for restriction "to be sound." Nevertheless, appellant continued to press his appeal of the restriction requirement matter before the board. The board stated:

> * * * the issue presented by * * [the examiner's modified restriction requirement] was still whether or not the subjects matter defined by the different groups of claims were examinable together. The propriety of such action is reviewable by petition under Rule 144. This course of action appellant adopted and received an adverse decision to his petition * * *. The request to review the restriction requirement between claims 1, 3, 9 and 2, 10, 11, 17 is accordingly denied. Claims 1, 3 and 9 along with claims 4 through 8 and 12 through 16 stand withdrawn from further consideration under Rule 142(b).

■ Appellant's request for reconsideration elicited the following expanded response by the board:

> The first four pages of this petition deal with the Board's refusal to review the Examiner's requirement of restriction between claims 1, 3 and 9 as group III and claims 2, 10, 11 and 17 as group IV. Notwithstanding the fact that appellant has received one review of the Examiner's restriction requirement by the Director of the Mechanical Examining Operation and a decision thereon * * *, appellant insists he is entitled to a second review of such restriction requirement by this Board.

7. Section 134 reads:
   134. Appeal to the Board of Appeals. An applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the primary examiner to the Board of Appeals, having once paid the fee for such appeal.
   Of course, not *all* claims in the application have to have been twice rejected.

* * * * * *

Reviews of restriction requirements are handled differently than reviews of claims rejected on their merits. Jurisdiction over the former lies with the Director of the examining corps [an obvious reference to the power delegated the Director under Rule 181 (g)], whereas, jurisdiction over the latter lies with this Board. These are coordinate jurisdictions and neither reviews the action of the other body. A review through proper channels, from the Director's decision on the restriction requirement, is available to appellant.

We call attention to Title 35 U.S.C. 134 which states that the purpose of an appeal is to afford review of claims which have been "twice rejected" by decision of the primary examiner.[7] Claims 1, 3 and 9 have not been so rejected. They have been denied examination under the provisions of section 121 of said Title and withdrawn from consideration as to the patentability of their subject matter. We repeat, such denial is not reviewable subject matter for consideration by this Board.

Here appellant argues that the examiner's requirement for restriction is not authorized by law inasmuch as the examiner did not expressly find that the inventions represented by the claims of Groups III and IV are independent *and* distinct as required by 35 U.S.C. § 121.[8] He further urges that the examiner's requirement for restriction as to claims 1, 3 and 9 is an "adverse decision" denying him a patent on *this* applicaton which contains those claims. He directs our attention to 35 U.S.C. § 7 which provides, inter alia, that the Board of Appeals, "on

See In re Szajna, 422 F.2d 443, 57 CCPA 899 (1970).

8. This, of course, resurrects the long-simmering question of compatibility between 35 U.S.C. § 121 and Rule 141 on the one hand, and The Manual of Patent Examining Procedure, § 802 et seq., on the other.

written appeal of the applicant, *shall review adverse decisions of examiners* upon applications for patents." [Emphasis supplied.] In light of that provision, it is appellant's position that review of the examiner's restriction requirement by the board is mandatory, and may not be nullified by Patent Office Rules 142(b) and 144 which themselves must not be inconsistent with law, 35 U.S.C. § 6. According to appellant:

> * * * The Board's argument that the requirement for restriction, its reconsideration and making of that restriction FINAL, is not an instance of "twice rejected" claims * * *, merely begs the question for Title 35, U.S.C. § 134 supplements and is not in derogation of the jurisdiction of the Board of Appeals under Title 35, U.S. C. § 7. * * *

In sum, it is appellant's view that the board has had at all times herein both jurisdiction and duty to review the "adverse decision" of the Commissioner by his examiners, and that its refusal to do so was error and a denial of an absolute statutory right of appellant.

Appellant's somewhat forceful arguments no doubt would have been more effective had they been presented in the circumstances existing for nearly 50 years preceding the 1952 Patent Act. By 1952, the Patent Office administrative practice of compelling applicants for patent in certain circumstances to limit the claims of an applicaton to one of several disclosed inventions had proceeded under judicial aegis, rather than explicit statutory authorization, for more than a century. Prior to 1904, review of decisions of the examiners in that regard was regularly had by petition to the Commissioner of Patents without recourse to the Examiners-in-Chief. But, in 1904, the Supreme Court was called upon to determine the validity of Patent Office Rule 41 then in effect, which required that claims to machine and process performed by that machine "must be" presented in separate applications, no matter how related and dependent the machine and process might be. Steinmetz v. Allen, 192 U.S. 543, 24 S.Ct. 416, 48 L.Ed. 555 (1904). In invalidating that rule as permitting of no discretion, the Court held that actions of the examiners pursuant thereto which denied a right of joinder of such claims in one application were both final and "a rejection of the application", and entitled the applicant "to an appeal to the examiners-in-chief, under § 4909 of the Revised Statutes." [9] 192 U.S. at 563, 24 S.Ct. at 423. Shortly thereafter, the Commissioner ruled that review of decisions of examiners requiring division was "by appeal to the Examiners-in-Chief," not by petition, Ex Parte Emerson, 1904 C.D. 118, and a change in the appropriate rule was drafted to reflect that change in Patent Office procedure. (Rule 133, Rules of Practice in the United States Patent Office, Revised July 2, 1904.) Of course, decisions of the Examiners-in-Chief under RS 4909 were still appealable to the Commissioner in person under RS 4910, until repeal of that latter provision in 1927.

Early in its patent jurisdiction history, this court treated restriction requirements made by examiners as "technically a final rejection" or as having "amounted to a final rejection" of the involved claims, and decided that it had jurisdiction to review decisions of the board of appeals in turn reviewing the propriety of the examiner's requirement. In re Hawkins, 57 F.2d 367, 19 CCPA 1104 (1932); In re Ferenci, 83 F.2d 279, 23 CCPA 1023 (1936); see also In re Ferenci, 83 F.2d 286, 23 CCPA 1095 (1936); In re Allatt, 121 F.2d 545, 28 CCPA

---

9. RS 4909 was the predecessor of present 35 U.S.C. § 134, fn. 7. *supra*. Although the Court also quoted RS 482, the predecessor of present day 35 U.S.C. § 7, in passing, it does not appear to have ruled directly on the petitioner's argument that the examiner's decision was adverse and that his right of appeal accrued under RS 482. 192 U.S. at 552, 24 S.Ct. 416. For purposes here, the language of RS 4909 and § 134, and RS 482 and § 7, may be considered identical.

1367 (1941). In assuming jurisdiction notwithstanding its earlier decision in Sundback v. Blair, 47 F.2d 378, 18 CCPA 1016 (1931), this court evidently felt that the board was acting in its own statutory appellate capacity when reviewing examiners' decisions requiring restriction, and not on behalf of the Commissioner in a delegated capacity provided solely by him under authority of Patent Office Rule. As the years passed, this court continued to exercise jurisdiction in this area. See e. g., In re Moss, 101 F.2d 536, 26 CCPA 861 (1939); In re Feight, 181 F.2d 206, 37 CCPA 990 (1950); and the last we have found, In re Meakin, 205 F.2d 168, 40 CCPA 1001 (1953). So matters went until January 1, 1953, the effective date of the 1952 Patent Act.

With the passage of that Act, however, several additions and changes were made in both statute and Patent Office rules which have significance here. For the first time, Congress expressly made statutory the power of the Commissioner to require an application to be restricted to one of two or more independent and distinct inventions claimed in that application by providing new section 121. In terms of the Revision Note, § 121 "enacts as law existing practice with respect to division, at the same time introducing a number of changes. Division is made discretionary with the Commissioner." In § 121, Congress termed that discretionary action of the Commissioner a "requirement for restriction." At the same time, the following emphasized phrases made their first appearance in section 132 of the 1952 Act, which superseded RS 4903 of otherwise similar import:

132, Notice of Rejection; reexamination.

Whenever, on examination, any claim for a patent is rejected, *or any objection or requirement made*, the Commissioner shall notify the applicant thereof, stating the reasons for such rejection, *or objection or requirement*, together with such information

and references as may be useful in judging of the propriety of continuing the prosecution of his application; and if after receiving such notice, the applicant persists in his claim for a patent, with or without amendment, the application shall be reexamined. * * [Emphasis supplied.]

As previously noted, section 134 of the 1952 Act, which provides that an applicant, any of whose claims has been twice *rejected,* may appeal from the *decision* of the examiner, replaced RS 4909 containing similar language.

Insofar as changes in Patent Office rules and procedure are concerned, we have already alluded to new Rule 144, effective January 1, 1953, which provides for review of examiner's restriction requirements by petition to the Commissioner. Simultaneously, the provision which previously had expressly given like authority to the board was deleted from amended Rule 191, the successor to old Rule 133. As stated on page 11, of the January 1, 1953 edition of the Rules of Practice and in all subsequent editions, "[t]he present edition contains the amendments effective January 1, 1953, which were made in view of the new patent laws [the 1952 Patent Act]". In light of all those additions and changes in statute and rules, various three-member panels of the board early determined, as did the board here, that it no longer had jurisdiction to review requirements for restriction of examiners. Ex parte Auer, 104 USPQ 149 (1954); Ex parte Reid, 105 USPQ 251 (dicta, 1954); Ex parte Wilson, 111 USPQ 142 (1955); and Ex parte Pearce, 128 USPQ 122 (1959).

On considering §§ 121, 132 and 134 and the intent unmistakably evinced by the clear language therein, it is evident to us that Congress, in marked contrast to the views expressed by the Supreme Court in Steinmetz v. Allen and later by this court in *Hawkins* and *Ferenci, supra,* decided not to regard the procedure involved in matters of "division" or "restriction" as a "rejection." Instead, section 121 denominates restric-

tion procedure as a "requirement". Section 132 states that the Commissioner shall give notice to the applicant whenever "any claim for a patent is rejected, or any objection or requirement made," stating the reasons "for such rejection, or objection or requirement." Section 134, providing for appeal to the board only by an applicant "any of whose claims has been twice *rejected*," is conspicuously silent as to the right to review of "requirements" or "objections". It is apparent, then, that Congress intended to differentiate between whatever requirements and objections an examiner might make on the one hand, and matters involving actual *rejections* of claims on the other, at least insofar as its provision of statutory rights of appeal to the board accruing from such actions in and of themselves.[10] We think the board correctly determined that the examiner's "requirement" here could not be considered an instance of claims be-being "rejected" at all, and its decision that it had no jurisdiction under § 134 to review it on that basis was also correct.

This, however, does not dispose of the case, since it is clear that, for the board to have *some* jurisdiction in a case, only *one* claim need be twice rejected, and that event occurred here. There thus remains appellant's argument that the examiner's action with respect to claims 1, 3 and 9 was an "adverse decision" within the meaning of 35 U.S.C. § 7 which the board is required to review. Quite aside from the fact that appellant has not satisfactorily explained how or why the examiner's action in this case is "adverse" to him,[11] appellant's contention appears predicated on the faulty premise that all "decisions," which are made by examiners in the course of examination of applications from time of receipt to final disposition by allowance or abandonment and which might be termed "adverse", are perforce reviewable by the board of appeals. Such has not been the case, either before or after the passage of the 1952 Patent Act. There are a host of various kinds of decisions an examiner makes in the examination proceeding—mostly matters of a discretionary, procedural or nonsubstantive nature—which have not been and are not now appealable to the board or to this court when they are not directly connected with the merits of issues involving rejections of claims, but traditionally have been settled by petition to the Commissioner.[12] With one exception, there is no suggestion that Congress, when it enacted 35 U.S.C. §§ 7 and 134 in substantially the language employed in RS 482 and 4909, intended to disturb that longstanding internal division of review authority established by

10. See also the remarks of P. J. Federico, a principal drafter of the 1952 Patent Act, in his "Commentary on the New Patent Act," 35 U.S.C. § 1–110 at pgs. 34 and 36. Mr. Federico's remarks on §§ 121, 132 and 134, to the extent applicable here, conform substantially with our own views.

11. It is perhaps arguable whether the examiner's decision is truly "adverse". The examiner's position as to ultimate patentability of claims 1, 3 and 9 would appear neutral. The examiner has not denied patentability of those claims to appellant in any final manner. Cf. Bruns v. Watson, 109 USPQ 8 (D.D.C. 1956), aff'd. Watson v. Bruns, 99 U.S. App.D.C. 327, 239 F.2d 948 (1956). Indeed, the examiner has not yet examined those claims to determine their conformance with the conditions for pat-

entability expressed in Title 35. While the examiner's requirement has the effect of precluding the appearance of the nonelected claims in a patent issuing on *this* application, there is nothing to prevent appellant from filing one or more further applications directed to the nonelected subject matter, all in accordance with § 121, if he so desires. Perhaps appellant may feel monetarily aggrieved by the examiner's action in light of fee requirements, but he has not made a point of it.

12. See, *e. g.*, In re Merriman, 22 CCPA 923. 74 F.2d 944 (1935); In re Kirby, 27 CCPA 919, 109 F.2d 786 (1940); In re Pavlecka, 50 CCPA 1342, 319 F.2d 180 (1963); In re Mindick, 54 CCPA 1053, 371 F.2d 892 (1967). But also see In re Searles, 422 F.2d 431, 57 CCPA 912 (1970).

the Patent Office and approved by this court. That one exception, of course, is a *requirement* for restriction under § 121 which is *now* one of those discretionary matters no longer tantamount to a *rejection* of the claims, as we have detailed earlier in this opinion. It follows that such a "requirement" by itself is not the *kind* of "adverse decision," if it be such a "decision" at all within the meaning of the statute, which Congress intended the board to review.

 Section 7, appearing in Chapter I of Title 35 relating to establishment of the Patent Office, its officers and functions, provides in general terms *an organization* or *vehicle* for review of adverse decisions. Section 134, appearing in Chapter 12 of Title 35 relating to examination of applications, is among the sections establishing *the statutory rights* an *applicant* has during the examination proceeding. To determine what statutory rights of review an applicant has and thus what kind of "adverse decisions" of examiners are reviewable by the board on appeal by applicants, it is necessary, we think, to turn to § 134. Reading § 7 and § 134 *in pari materia*, as we must, we feel that the *kind* of adverse decisions of examiners which are reviewable by the board must be those which relate, at least indirectly, to matters involving the *rejection* of claims.

As further support for the position we take, we note the construction and interpretation of the relevant provisions of the 1952 Act by the Patent Office as voiced in new Rule 144 and amended Rule 191, adopted in implementation of the Act and promulgated simultaneously with the effective date thereof. Those rules recognize a change in practice, and place actions of examiners in requiring restriction under § 121 within the supervision of the Commissioner and beyond the pale of review by the board, a policy consistently followed to this day so far as we are aware. Such administrative practice under the 1952 Act is entitled to weight in construing the statute. In re Marriott-Hot

Shoppes, 411 F.2d 1025, 56 CCPA 1230 (1969); Lindberg v. Brenner, 130 U.S. App.D.C. 257, 399 F.2d 990 (1968), and cases cited therein.

Appellant complains that the board did not point out what further right or channel of review was available to him from the decision of the director on his petition, if not by appeal to the board. As the solicitor points out, action under 5 U.S.C. §§ 701–706 would appear appropriate to obtain that review. See also Torok v. Watson, 122 F.Supp. 788, (DC 1954).

The decision of the board as to the scope of its jurisdicton under 35 U.S.C. §§ 7 and 134 is affirmed. The appeal is dismissed as to claims 1, 3 and 9, inasmuch as neither the board nor we have jurisdiction as to the subject matter of appeal, the propriety of the restriction requirement per se.

The decision of the board is affirmed.

Affirmed.