**Application of Robert E. DOLLINGER and Robert H. Kallenberger.**

**Patent Appeal No. 8761.**

United States Court of Customs and Patent Appeals.

March 15, 1973.

Donald J. Quigg, L. Malcolm Oberlin, Louis N. French, Philip R. Cloutier, Bartlesville, Okl., of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patent; John W. Dewhirst, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This is an appeal from the decision of the Board of Appeals, adhered to on reconsideration, sustaining the rejection of claims 29, 30, 31, 38, 39 and 41–44 (hereafter referred to as the rejected claims) and dismissing the appeal as to claims 33–37 and 40 (hereafter referred to as the dismissed claims) of appellants' application [1] entitled "Method and Apparatus for Producing Carbon Black." All of the claims involved in this appeal

---

1. Serial No. 560,493 filed June 27, 1966, as a continuation-in-part application of Serial No. 515,104 filed December 20, 1965.

are process claims. We affirm the decision of the board.

### The Subject Matter

Claim 29 is representative of the rejected claims and, with subparagraphing ours, is as follows:

> In a process for producing high structure carbon black, the steps which comprise
>
> injecting a hydrocarbon feed stream axially into a first generally cylindrical zone,
>
> injecting a first gas stream containing air into said zone and passing it along the outer portion thereof in a direction concurrent with the flow of said feed,
>
> passing the resulting streams successively through generally cylindrical second and third zones, the diameter of the second zone being substantially greater than that of the first and third zones,
>
> introducing a second gas stream produced by burning fuel with air into the outer portion of said second zone, the volume of air in said first gas stream being at least 15 per cent of the combined volume of air in the first and second gas streams,
>
> adding sufficient heat with said gas streams to heat the feed to a carbon black forming temperature as it traverses said zones, and
>
> recovering carbon black from the gas stream leaving the third zone.

The other rejected claims depend from claim 29 and impose various limitations on the process defined therein.

Figure 1 of appellants' specification illustrates the apparatus used:

FIG. 1

In their brief, appellants explain the claimed subject matter as follows:

> The claims involved in this appeal * * * define processes for producing carbon black of increased structure by introducing at least 15% of the process air in a generally axial direction through a first generally cylindrical zone along with a hydrocarbon feed. The hydrocarbon and air flow through an enlarged second zone into a smaller third zone. The remainder of the process air (85% or less) is introduced into the enlarged second zone along with fuel. The resulting heat of combustion converts the hydrocarbon feed to carbon black which is recovered at the end of the third zone.
>
> With reference to Figure 1 of the drawing * * *, the hydrocarbon feed is injected axially through a nozzle 48 into a first generally cylindrical zone 12. Air is injected axially into zone 12 through a conduit 26 and passes concurrently with the hydrocarbon feed into an enlarged cylindrical second zone 14 and then through a third zone 18 which is of smaller diameter than zone 14. The first gas

stream recited in the claims may consist of the air axially introduced into conduit 26, or it may be a mixture of the air and fuel gas which is introduced through a conduit 34. This fuel gas serves to increase the yield of carbon black. The remainder of the process air is introduced in admixture with fuel through a tunnel 16 which communicates with zone 14. This portion of the air enters the outer region of zone 14 as the second gas stream recited in the claims, which is produced by burning fuel with air. The heat produced by combustion converts the hydrocarbon feed to carbon black which is recovered at the downstream end of the third zone 18.

The term "structure" refers to the tendency of the individual carbon black particles to form chain-like agglomerates. Structure is measured by the amount of oil which can be absorbed on a given mass of carbon black. A high oil absorption value means that the black has high structure. Such blacks have superior extrusion properties when compounded with rubber, and are easier to mix with the rubber. The processes defined by the claims involved in this appeal produce carbon black having a high structure.

In this appeal, the issues raised with respect to the rejected claims are different than those raised with regard to the dismissed claims. We consider the two sets of claims seriatim.

*The Rejected Claims*

■ Rejections of these claims under both 35 U.S.C. § 112 and 35 U.S.C. § 103 have been sustained by the board. Since we agree with the board that the claims are unpatentable for obviousness, we need not reach any § 112 issues.

Several alternative § 103 rejections were affirmed by the board. The only ones we need consider are the following:

(1) Claims 29, 30, 31, 39, 41 and 43 as unpatentable over Krejci et al.[2] (hereafter Krejci);

(2) Claims 38 and 42 as unpatentable over Krejci in view of Peters;[3]

(3) Claim 44 as unpatentable over Krejci in view of Helmers.[4]

Krejci discloses the manufacture of high structure carbon black by a method very similar to appellants'. Krejci explains that the prior art commonly used so-called "tangential flame" processes wherein a carbonaceous reactant and an oxidizing or combustion gas are introduced axially into a generally cylindrical multi-zone reaction chamber. Tangential flame processes sometimes include the use of a small stream of air, called "jacket air," which keeps the feed line cool to prevent premature carbon black formation therein. Krejci discovered that the structure of carbon blacks could be made higher by the substitution of free oxygen for at least some of the jacket air.

The examiner's uncontroverted characterization of the Krejci process is as follows:

[A process comprising] a hydrocarbon feed stream * * * injected axially into a first cylindrical zone, a gas stream containing free oxygen injected into said zone along the outer portion thereof in a direction concurrent with the flow of said feed, the streams passed into a second zone having a diameter greater than the diameter of the first zone, oxygen-containing combustion gases introduced tangentially into said second zone establishing a mass of hot gases surrounding the admixture introduced from the first zone, the admixture and surrounding mass of hot gases passed into a third cylindrical zone having a

2. U.S. Patent No. 3,355,247 issued November 28, 1967, on an application filed May 25, 1964.

3. U.S. Patent No. 2,800,394 issued July 23, 1957.

4. U.S. Patent No. 2,967,090 issued January 3, 1961.

diameter less than the diameter of said second zone, and separating carbon black from the gaseous effluent ' from said third zone.

Appellants assert that Krejci differs from the claimed process in that there is neither disclosure nor suggestion of the requirement that at least 15% of the total air be introduced in the first zone. Upon careful review of the record before us and arguments of counsel, we conclude that the process set forth in the claims to which rejection (1), supra, applies would have been prima facie obvious from Krejci and that appellants' assertion of unexpected results has not been established by any evidence of record including an affidavit of coinventor Dollinger offered for the purpose of proving that assertion.

One of ordinary skill in the art would readily recognize that Krejci envisions *some* distribution of the oxygen-containing gases introduced in the first and second zones. Since the jacket gas introduced into the first zone "can be a mixture of air and added free oxygen * * * [containing] at least 33, preferably at least 50, volume percent of free oxygen" while the oxygen-containing element of the combustion mixture introduced in the second zone may be air, a division of the total air injected in the system is disclosed.

The board regarded a specific example of the Krejci disclosure as suggesting the proportional distribution of air claimed by appellants. A considerable portion of appellants' argument is directed to contesting the board's conclusions based on this example, and the solicitor has challenged the assumptions upon which appellants' contentions are based. We see no reason to focus on the controversial example.

We agree with the more general observations of the solicitor to the effect that the thrust of the Krejci disclosure is that high oxygen content in the first zone jacket gas leads to improved structure and that a high relative proportion of air in the first zone gas stream is,

prima facie, an obvious mode of insuring high oxygen content in that stream. We are of the view that the selection of an optimum proportion of first stream air content to total air content would be obvious to one of ordinary skill in the art and find nothing in Krejci which would steer one away from the use of at least 15% air in the first stream. Cf. In re Sebek, 465 F.2d 904, 59 CCPA — (1972).

The Dollinger affidavit purports to prove that the use of air at a first stream to total proportion of 15% yields carbon black of higher structure than that obtained by the procedure set forth in the aforementioned Krejci example wherein the proportion of air in the first stream was 7.9%. The examiner did not find it convincing of nonobviousness for various reasons, including the fact that the structure achieved at 15% falls within the broad disclosure of Krejci. The examiner concluded, and the board agreed, that no unexpected results were demonstrated.

We agree with the Patent Office conclusions with respect to appellants' affidavit evidence. We think it could be reasonably expected from Krejci that a higher proportion of air in the first stream would result in higher structure. The degree of oil absorption, which is a measure of structure, obtained by appellants at 15% is within the purview of that which is attainable through the Krejci process. Appellants' evidence also fails to establish any significance in the 15% figure. Although appellants consider that the examiner specifically requested a comparison between products obtained by their process and that resulting from Krejci's example and are distributed by the examiner's failure to be convinced of patentability by the comparison once it was presented, a fair reading of the examiner's rejection does not indicate that he was suggesting that such evidence would necessarily rebut the rejection he had made. In any event, the evidence must, of course, be persuasive, and it is not.

For the stated reasons, we find no error in the decision of the board sustaining the principal rejection (1) based on Krejci alone. Rejections (2) and (3), supra, differ in that Peters and Helmers, respectively, were added in response to various limitations imposed in the claims to which those rejections apply. Appellants have advanced no separate argument concerning those rejections except to contend that neither Peters nor Helmers fills the voids appellants find in Krejci. In view of our conclusions with respect to the rejection based on Krejci, we likewise find no error in the board's decision sustaining rejections (2) and (3).

### The Dismissed Claims

▋ The board dismissed the appeal as to claims 33–37 and 40 of appellants' application. Claim 33 reads as follows:

33. The process of claim 31 wherein the volume of the first gas stream is 15 to 60 per cent of the combined volumes of the first and second gas streams.

The examiner expressed the following rejections in his Answer:

Claims 33–37 and 40 are indefinite and lack basis in the specification as to the volume of the "first gas stream" being 15–60 percent of the combined volumes of the "first and second gas streams". It is noted that the disclosure on page 6, lines 12–16 of the specification relates to the volume of *air* used in the process and not to the gas streams recited in the present claims which obviously are not limited only to air.

\* \* \* \* \* \*

Claims 33–37 and 40 are rejected under 35 U.S.C. 132 as drawn to new matter as to the volume of the first gas stream being 15 to 60 percent of the combined volumes of the first and second gas streams which lacks basis in the original disclosure. It is again noted that the disclosure on page 6, lines 12–16 of the specification relates to the volume of *air* used in the proc-

ess and not to the gas streams recited in the present claims which obviously are not limited only to air.

In its original decision, the board stated the following:

At the hearing, counsel for Appellants admitted that claims 33 through 37 and 40 are in error in referring to 15–60% of the *gas* streams, instead of *air* streams. Accordingly, the appeal is *dismissed* as to claims 33 through 37 and 40.

Appellants requested reconsideration asserting that counsel had not made such a concession, or at least could not recall it, and urging that the board review the propriety of the examiner's rejection of the relevant claims on the merits. However, the board adhered to its action dismissing the claims and stated:

The dismissal was based upon an oral statement by counsel at the hearing, conceding that the rejection was proper. Appellants seek to withdraw that concession and ask for a decision on the merits of the rejection.

Appellants' sole argument in their brief is that these claims refer to volumes of *air*. The Examiner's answer points out that they refer only to *gas*. No reply brief was submitted. As it appears that appellants agree with the Examiner that these claims should refer to *air*, instead of to *gas*, there is no issue here requiring adjudication. Accordingly, the appeal remains dismissed as to these claims.

It is not here asserted by appellants that the underlying rejections are erroneous or that the facts assumed by the board to have been admitted are in any event untrue. Appellants merely urge that the board erred in *dismissing* the appeal, and they request we reverse and remand the case to the board.

The position of the solicitor is that the dismissal of the involved claims was "not a 'decision' which this court has jurisdiction to review. In re James, 57 CCPA 1371, 432 F.2d 473 (1970)." Quoting from *James*, the solicitor con-

tends that the board here was not acting "in any statutory capacity, reviewing, on its merits, an adverse decision of the examiner," but was rather "acting only under authority of the rules—as an agent of the Commissioner * * *."

The statutory jurisdiction of this court to review "decisions" of the board, 35 U.S.C. § 141, depends in turn on the statutory jurisdiction of the Board of Appeals to review "adverse decisions of examiners * * *." 35 U.S.C. § 7; see also 35 U.S.C. § 134. We may inquire into whether or not the board reviewed, in the present case, an adverse decision of the examiner relating to matters involved in the rejection of claims. See In re Hengehold, 440 F.2d 1395, 1404, 58 CCPA 1099, 1111 (1971). Compare Pat.L.Persp. § A.12 (1970 Dev. A.12–3). We do not agree with the implicit suggestion of the solicitor that the mere label "dismissal" would necessarily exclude board action from the purview of "decision" within the meaning of § 141. What the board did is the pertinent fact regardless of the tag placed on its action.

In the present case, it is apparent that the board did not review the decision of the examiner with respect to the dismissed claims, but instead determined that appellants had acquiesced therein on the basis of an alleged oral concession and, at least in part, the nature of appellants' argument in their brief before the board which has not been placed in the transcript of record certified to this court. We have been offered neither evidence nor substantial argument which would tend to support a finding of error in the board's refusal to review the examiner's action. Moreover, appellants have not indicated to us any reason for believing the examiner to have been incorrect in his action. Under the circumstances here present, we are not disposed to review the board's dismissal of these claims.

The appeal as to claims 33–37 and 40 is accordingly *dismissed*. The decision of the board with respect to claims 29, 30, 31, 38, 39 and 41–44 is *affirmed*.

Affirmed.