**Application of Howard C. HAAS.**
**Patent Appeal No. 9136.**

United States Court of Customs
and Patent Appeals.
Nov. 1, 1973.

Sheldon W. Rothstein, Brown & Mikulka, Cambridge, Mass., attorneys of record, for appellant; Donald R. Dunner, Washington, D. C., of counsel.

Ellsworth H. Mosher, Arlington, Va., for amicus curiae.

Joseph F. Nakanura, Acting Sol., for the Commissioner of Patents.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

MARKEY, Chief Judge.

This appeal is from the dismissal by the Board of Appeals in Ex parte Haas, 175 USPQ 217 (1972), for lack of jurisdiction of an appeal from the examiner's "withdrawal from further consideration" of claims 1 and 2 of appellant's application, serial No. 821,511, filed May 2, 1969, entitled "Novel Polymerization Initiators." [1] We hold that the board erred in its denial of jurisdiction under 35 U.S.C. §§ 7 and 134 and remand for review on the merits of the examiner's action.

### The Invention

The invention relates to benzoyl peroxide compounds containing reactive moieties on the benzene rings, said compounds being useful in the initiation of the formation of polymers whose chains

---

1. A continuation-in-part of serial No. 630,222, filed April 12, 1967.

are each capped with a reactive group on one or both ends. These reactive substituents of the peroxide compounds are set forth in Markush format. Claim 1 is representative:

1. A compound of the formula:

$$X\text{—}C_6H_4\text{—}\overset{O}{\underset{\|}{C}}\text{—}O\text{—}O\text{—}\overset{O}{\underset{\|}{C}}\text{—}C_6H_4\text{—}X$$

wherein X is a reactive functional group selected from the group consisting of α-monosubstituted chloro, bromo and fluoro alkyl groups containing from 1 to 3 carbon atoms, inclusive; formyl; formyl substituted alkyl groups containing from 1 to 4 carbon atoms, inclusive; isocyanate; and isocyanate substituted alkyl groups containing from 1 to 4 carbon atoms inclusive.

Dependent claim 2 limits X to the para position of the benzene rings.

### Background

Claims 1 and 2 of the present application are very similar to claims 1 and 2 of the parent case. The latter had been rejected under 35 U.S.C. § 112 as being indefinite and inadequately supported. In the present case, however, the examiner chose to withdraw claims 1 and 2 from further consideration on the ground that they included multiple "patentable distinct" inventions. A species claim was allowed. A narrow Markush claim, encompassing only those reactive moieties similar to the allowed species, was suggested. Appellant was given thirty days to cancel claims 1 and 2 and the prosecution was otherwise closed.[2]

Appellant filed a petition under Rule 144 which was denied. His request for reconsideration was also denied. We note that both were denied by the director of the same examining group from which the examiner's action had originated.

The issue of the withdrawal of claims 1 and 2 was taken to the Board of Appeals, which accorded appellant an en banc hearing by fifteen Examiners-in-Chief. A split decision resulted, with nine members of the board joining or concurring with the principal opinion, five dissenting in full and one dissenting in part. The basic holding of the principal opinion was:

> In summation, we cannot find that the Examiner has made a rejection of the claims here before us on any statutory ground which falls within our appellate jurisdiction. * * *

The appeal was dismissed.

The withdrawal practice has apparently become widespread in the Patent Office. The impact of a denial of appellate review of that practice has been emphasized before us not only by appellant but by the American Patent Law Association in an amicus curiae brief.

### OPINION

#### Jurisdiction of This Court

Prior to oral hearing the solicitor filed a motion to dismiss this appeal for lack of jurisdiction. The motion having been denied "without prejudice to renewal at oral argument," it was renewed in the solicitor's brief and at oral argument. It is the solicitor's basic contention that the board's dismissal was not the type of "decision" required by 35 U.S.C. § 141 to confer appellate jurisdiction upon this court.[3] It is urged that the board was not acting in its statutory capacity, reviewing on the merits an adverse decision of an examiner (35 U.S.C. § 7).

We have an inherent power to review any action of the board which affects our appellate jurisdiction. Cf. In

---

2. A complete discussion of the prosecution history and appellant's quest for relief from the examiner's action is set forth in the principal opinion in Ex parte Haas, supra.

3. The pertinent part of 35 U.S.C. § 141 reads:

   An applicant dissatisfied with the decision of the Board of Appeals may appeal to the United States Court of Customs and Patent Appeals, thereby waiving his right to proceed under section 145 of this title.

re Szajna, 422 F.2d 443, 57 CCPA 899 (1970). Both 28 U.S.C. § 1542 and 35 U.S.C. § 141 limit our jurisdiction to appeals of "decisions" of the board. The board's authority to make such "decisions" is set forth in 35 U.S.C. § 7. But this court has the right to determine whether the board properly refused to make such "decisions" in its statutory capacity. To hold otherwise would be to confer upon the board the power, albeit undoubtedly unwanted and unsought, to control the subject matter jurisdiction of this court.

■ Here the dismissal was a refusal to act under 35 U.S.C. § 7 on an appeal under 35 U.S.C. § 134 because there had not been the *rejection* necessary to confer jurisdiction on the board. Cited by the board as support is In re Hengehold, 440 F.2d 1395, 58 CCPA 1099 (1971), wherein we held that under the combined effect of § 7 and § 134 the board's review must be restricted to those adverse decisions of examiners "which relate at least indirectly, to matters involving the *rejection* of claims." As applied to our jurisdiction, however, we point out that in *Hengehold* itself the inherent power of this court to review the board's action was invoked, although we therein concluded that the board had correctly determined the scope of its jurisdiction.

The solicitor relies on this court's conclusion in In re James, 432 F.2d 473, 57 CCPA 1371 (1970), that "an acceptable 'decision,' in the jurisdictional sense, refers to an action taken by the board, in a capacity provided for in the statutes which has been dispositive of the appeal in that it has adjudicated a legal right." But in *James* the board refused to act because of a *procedural* defect, the failure to file a reply brief. Here the board's dismissal was founded on the substantive holding that there could be no review under 35 U.S.C. § 7 because there was no basis for appeal under 35 U.S.C. § 134. The controversy turns on whether the board properly determined that no "decision" in the sense of § 141 *could* rather than *would* be made.

In the recent case of In re Dollinger, 474 F.2d 1027 (Cust. & Pat.App.1973), we held that our jurisdiction under § 141 is dependent upon the jurisdiction of the board under § 7, viewed in light of § 134. Thus in order to confer *subject matter* jurisdiction upon us, the board must have reviewed an adverse decision of the examiner relating at least indirectly to a rejection of the claims. In *Dollinger* the board had acted on its own in dismissing as to certain claims because of appellants' *acquiescence* in their rejection. Similarly in the case of In re Litman, 480 F.2d 872, Cust. & Pat.App.1973), the board's independent dismissal as to certain claims rested on appellants' *failure to respond* to a rejection of those claims. In neither *Dollinger* nor *Litman* was there a review of an examiner's adverse decision. Subject matter jurisdiction had not been conferred upon us.

In those cases we found nothing which dictated our review of the board's refusal to exercise jurisdiction. No doubt had been raised as to the appellants' right to appeal the examiner's action. A "rejection" was clearly present. Only the appellants' acquiescence or inaction was at issue. In the present case, however, the basic question of jurisdiction has been raised. An answer to that question requires our consideration of the board's decision that no "decision" could be made and of the nature of the examiner's underlying action. Accordingly, the motion to dismiss is denied.

### Nature of Examiner's Action

■ In considering the examiner's action we look both to the language employed and the *effect* thereof. We consider the form and the substance. Although the principal opinion below considered the examiner's language "most nearly suggestive of a restriction requirement," the effect of that language must also be considered. The particular packaging employed cannot be determinative.

The examiner stated:

Claims 1–2 are held withdrawn from further consideration by the Examiner

under 35 U.S.C. §§ 101 and 121 as being inclusive of multiple patentable distinct inventions.

Prosecution as to those claims was then closed and they were never to be considered on the bases of § 102, § 103 and § 112. The petition to compel examination of the subject matter of the claims and the subsequent request for reconsideration were to no avail. The petition was denied because "[c]laims which include more than one patentably distinct invention are improper and need not be acted on." The Examiner's Answer emphasized that the claims were "withdrawn" and not under "rejection" and referred to the merits of the withdrawal only by citation to the denial of the petition.

We are not here faced with the usual restriction requirement under 35 U.S.C. § 121 wherein separate claims directed to an invention "independent and distinct" from an elected invention are withdrawn from consideration in a particular application. Accordingly, as pointed out below in the dissents of Examiners-in-Chief Witherspoon and Mangan, the *Hengehold* case, involving separate claims, is not controlling.

In fairness, we note that the board did attempt to "go behind the bare words because of the possibility that a rejection in fact has been mislabeled as a withdrawal (or objection)." A stumbling block arose, however, in the apparent refusal even to consider the possibility that a rejection had been made under § 121.[4] That a de facto rejection had been made without statutory basis was also not considered. The withdrawal from any further consideration was instead classified as a "refusal * * * to act on claims" in keeping with a restriction requirement and deemed a purely administrative matter.

We find that the action taken by the examiner did in fact amount to a rejection of claims 1 and 2. Those claims were withdrawn from consideration not only in this application but prospectively in any subsequent application because of their content. In effect there had been a denial of patentability of the claims. Presumably only by dividing the subject matter into separate, and thus different, claims in plural applications could an examination of the patentability of their subject matter be obtained.

### Conclusion

We are thus led inevitably to the conclusion that the examiner's action here meets the standard established in *Hengehold* for adverse decisions reviewable by the board. The absolute "withdrawal" herein cannot properly be categorized as merely a "requirement" or "objection" and the avenue of review thereby be restricted to petition and judicial examination under 5 U.S.C. §§ 701–706. An examiner's adverse action of this nature *is* a rejection, a denial of substantive rights. Review thereof must fall within the jurisdiction of the board.

### Summary

We hold, therefore, that the Board of Appeals has jurisdiction under 35 U.S.C. §§ 7 and 134 to review an adverse decision of an examiner when that decision, although designated a "withdrawal" of a claim from further consideration, is in fact a rejection of that claim on the ground that it encompasses independent and distinct inventions. Accordingly, we reverse the decision of the board to dismiss the appeal and remand for further action by the board not inconsistent herewith.

Reversed and remanded.

ALMOND, Senior Judge (concurring).

I agree with the majority's conclusion that this court has the power to review board determinations pertinent to juris-

---

4. The board's disregard of § 101 as an appropriate basis, because of insufficient argument, need not be treated here. We caution, however, that such application of § 101 would conflict with the final sentence of § 121. The purpose of § 101 is to define patentable subject matter, not to limit a patent to one invention.

diction. I also agree that the board's decision in this case should be reversed and the case remanded to it for further consideration. However, my reasons differ from those expressed by the majority.

The majority appears to hold that a restriction requirement invoked against a single claim on the ground that it contains independent and distinct inventions must in all circumstances be regarded as a "rejection" and subject to review by the board. As I see it, this holding leaves the board several options.

The board can find that § 121 does not afford a statutory basis for making restriction requirements against single claims. Put another way, it can conclude that a single claim cannot contain "independent and distinct inventions" within the meaning of § 121. Alternatively, the board might conclude that § 121 does provide a statutory basis for such requirements. In the latter event, the majority opinion seems to demand that the board consider whether in fact the claims involved here contain "independent and distinct inventions." In other words, the board must also consider the propriety of the actual restriction requirement made if it decides that § 121 empowers the Patent Office to make such requirements against members recited in a Markush claim.

In my view, the majority opinion goes too far. I believe that the board should be restricted to a consideration of the threshold legal question of whether § 121 authorizes the Patent Office to make a restriction requirement against allegedly independent and distinct inventions within a single claim. Absent such authority, I would agree that the examiner's action in this case would amount to a rejection without a statutory basis. I think the board has jurisdiction to consider this question.

However, if the board should conclude that § 121 permits such a restriction requirement, it should not go further and consider the propriety of that requirement. I regard In re Hengehold, cited by the majority, as controlling on this point. I do so because I see no logical basis for interpreting § 121 in a manner which would create a jurisdictional dichotomy by which the propriety of a requirement for restriction made against a single claim is reviewed by the board, whereas one made on the ground that independent and distinct inventions reside in separate claims must be reviewed by the Commissioner upon his receipt of a proper petition. Accordingly, I would remand the case to the board with instructions consistent with my above-stated view.

BALDWIN, Judge (concurring).

I agree with the denial of the motion to dismiss for reasons stated and further agree that the examiner's actions amounted to a substantive rejection of the claims. In fact, it is the same rejection as has traditionally been given on the basis that the claim contained "improper Markush groups." See the dissenting opinions of Examiners-in-Chief Mangan, 175 USPQ at 226–29, and Witherspoon, 175 USPQ at 235–37. In re Hengehold, 440 F.2d 1395, 58 CCPA 1099 (1971), which specifically exempted from its purview actions "which relate, at least indirectly, to matters involving the rejection of claims," is not controlling, and the board, and thus this court, does have jurisdiction to rule on the propriety of the actions taken by the examiner, and this case should be remanded to the Patent Office for that purpose.