**Application of Gerhard WOLFRUM and Heinrich Gold.**
**Patent Appeal No. 8882.**

United States Court of Customs and Patent Appeals.
Nov. 1, 1973.

Michael G. Gilman, New York City, amicus curiae.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the rejection under 35 U.S.C. § 112 (second paragraph) of claims 11 and 12 of appellants' application, serial No. 591,141, filed November 1, 1966, for "Azo Dyestuffs." We reverse.

### The Invention

The invention relates to novel azo dyestuffs which may exist in both the tertiary amine form (water-insoluble) and the quaternary salt form (water-soluble). Conversion from one state to the other is said to be a well known basic reaction.

Claim 11 covers both forms:

11. An azo dyestuff selected from the group consisting of

Earl L. Tyner John J. F. Matthews, Plumley & Tyner, Arlington, Va., attorneys of record, for appellants.

wherein R stands for hydrogen or methyl; $R_1$ is a member selected from the group consisting of chloro, bromo, lower alkyl, trifluoro lower alkyl, lower alkoxy, and acetylamino; m is an integer from 0 to 2; $R_2$ stands for hydrogen, lower alkyl, or substituted lower alkyl, wherein the substituents are selected from the group consisting of cyano and ethoxy carbonyl; $R_3$ and $R_4$ are independently selected from the group consisting of hydrogen, lower alkyl, lower alkoxy methyl, phenyl, chlorophenyl, bromophenyl, lower alkyl phenyl, carboxylic acid, carbolower alkoxy; $R_5$ is selected from the group consisting of lower alkyl and benzyl; A is selected from the group consisting of phenyl, substituted phenyl, thiazol (1, 3)–2–yl, 5–nitro thiazol (1, 3)–2–yl, benzothiazol (1, 3)–2–yl, 6–chloro benzothiazol (1, 3)–2–yl, 6–ethoxy benzothiazol (1, 3)–2–yl, 3–phenyl-thiadiazol (1, 2, 4)–5–yl, and triazol (1, 2, 4)–3–yl, wherein the substituents on said phenyl radical are members of the group consisting of halogen, lower alkyl, lower alkoxy, nitro, cyano, carboxy trifluoromethyl, carboxy lower alkyl, sulphoxy lower alkyl, carbonamide, lower alkyl carbonamide, dilower alkyl carbonamide, sulfonamide, lower alkyl sulfonamide, and dilower alky sulfonamide; X stands for an anion; and wherein the alkyl groups contain from 1–4 carbon atoms; said dyestuff being free of sulphonic acid groups.

Claim 12 is restricted to the tertiary amine species.

### The Rejection

Appellants originally submitted separate claims to the tertiary amine compounds and the quaternary ammonium salts. Restriction to one of these forms was required by the examiner on the basis of diverse utilities, the water-soluble quaternary salts being considered "distinct" from the insoluble dyestuffs of the intermediate tertiary amine form. An election was also required between the species "of patentably distinct inventions" wherein the diazo component was phenyl-thiadiazol and substituted phenyl. The required elections of inventions and species were made with traverse and submission of additional claims, including claim 11 which presented the two forms as members of a Markush group. The examiner then rejected claims 11 and 12 under the second paragraph of 35 U.S.C. § 112 because of the combination of forms previously held subject to restriction (claim 11) and the combination of phenyl and thiazole diazo components (both claims).

Appellants then petitioned the Commissioner under Rule 144, seeking reversal of the underlying restriction requirement. The petition was denied and the matter of the allegedly improper Markush groupings went to appeal. In the Examiner's Answer the position was set forth that the two groupings lacked the "requirements of proper Markush formulation," these "requirements" being that "the whole compounds [must] enjoy a recognized community of physical or chemical characteristics not repugnant to scientific classification coupled with utility."

The board found it unnecessary to go into any discussion of prior decisions on Markush practice and instead stated the issue simply as "whether or not a plurality of inventions, which could not be separately claimed in a single case, could be claimed together in *one claim*." The question of whether the "inventions" were properly subject to restriction was said to have been "settled by the examiner's ruling and the decision on petition * * *."

The board then went on to sustain the rejection, holding:

* * * We believe that under 35 U.S.C. 112 an appellant does not definitely and accurately point out his invention when he assembles a plurality of different inventions in a single claim. * * *

## OPINION

Appellants' basic contention is that the second paragraph of 35 U.S.C. § 112 [1] merely states that the specification shall conclude with one or more claims "which clearly and distinctly describe the invention which the applicant believes he invented" and provides no ·authority for rejecting a claim on ·the basis of an "arbitrary" Patent Office determination that the claim contains a plurality of inventions.

We agree. In recent years this court has fully set forth the statutory requirements of § 112. The first sentence of the second paragraph in particular has been construed as a requirement that applicant "particularly point out and distinctly claim the *subject matter sough to be patented.*" In re Borkowski, 422 F.2d 904, 909, 57 CCPA 946, 951, (1970). Under this provision of § 112, the scope of the subject matter is governed not by the examiner's conception of the "invention" but by that "which the applicant regards as his invention." When the boundaries of the patent protection sought are so limited, the only concern under the second paragraph of § 112 must be directed to the preciseness and definiteness of the claim language employed. In re Borkowski, supra; In re Wakefield, 422 F.2d 897, 57 CCPA 959 (1970); In re Swinehart, 439 F.2d 210, 58 CCPA 1027 (1970).

Thus a determination by the Patent Office that earlier, separate claims encompass a "plurality of different inventions" cannot serve, *under* § *112,* as the basis for a rejection of a later combined claim. An applicant is free under that provision to set the metes and bounds of "his invention" as he sees them. Subsequent compliance with an Office restriction requirement with *traverse* cannot be considered a voluntary realignment of the claim boundaries or

a concession that more than one invention was originally claimed. Whether a plurality of inventions had been claimed was not "settled" by the restriction requirement and the denial of the petition, the present appeal having in effect kept that issue alive. Appellant remained free to regard the claimed subject matter as his invention.

The solicitor argues that "[a]lthough the stated statutory basis for rejection cited by the examiner and the Board was 35 U.S.C. § 112 (second paragraph), the rationale of the rejection implicitly also encompasses the provisions and mandate of 35 U.S.C. §§ 101 and 121." We do not agree. The rejection before the board was made under 35 U.S.C. 112, second paragraph. Our review is of the board's decision on that rejection. The ramifications of the application of sections 121 and 101 to a single Markush type claim allegedly containing a plurality of inventions is not here before us. See In re Haas, P.A. 9136, decided of even date.

The decision of the board is reversed.

Reversed.

BALDWIN, Judge (concurring).

The board stated that the issue raised was "whether or not a plurality of inventions, which could not be separately claimed in a single case could be claimed together in *one claim.*" The board answered the question in the negative stating "[w]e believe that under 35 U.S.C. § 112 an appellant does not definitely and accurately point out his invention when he assembles a plurality of different inventions in a single claim."

The phrase "could not be separately claimed in a single case" does not precisely describe the situation, and overly rigidifies the rule of law ·put forth by the board. Under the statute, specifically section 121, any number of inventions

---

1. 35 U.S.C. § 112, second paragraph, reads:
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention. A claim may be written in independent or dependent form, and if in dependent form, it shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim.

*can* be claimed in the same application even though they be wholly independent and unrelated to each other and patently, as well as patentably, distinct, *if* the Commissioner does not require restriction between them. The more precise question is whether independent and distinct inventions may be claimed in the same claim without violating section 112. The board's position appears to be that if the two inventions are independent and distinct, *ipso facto,* claims covering both of them are indefinite and inaccurate. I cannot agree with that proposition. Assuming arguendo that the claims before us cover independent and distinct inventions,[1] no reason has been put forth or is apparent why that fact renders them inaccurate or indistinct as to their meaning or as to what they cover. I therefore agree that the rejection before us should be reversed.

1. Throughout the prosecution of this case appellants have strenuously contended that the tertiary amines and the quaternary amines are not independent. While the issue of "patentable distinctness" was dealt with by the examiner, the only reasoning in the record before us as to why they might be independent, the other requirement of 35 U.S.C. § 121, is a statement that "[s]pecies are ordinarily considered independent inventions * * * *" in the decision on appellants' petition to the Commissioner under Patent Office Rule 144. This opinion assumes that they are independent within the meaning of the statute *purely* for the sake of argument, and no decision on the merits of that issue is intended to be implied.